CHAYA M. MANDELBAUM (SBN: 239084)
Email: cmm@rezlaw.com
MICHELLE G. LEE (SBN: 266167)
Email: mgl@rezlaw.com
RUDY, EXELROD, ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA  94104
Telephone: (415) 434-9800
Facsimile:  (415) 434-0513

Attorneys for Plaintiff
JULIE EMBLETON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE EMBLETON, as an individual and in her representative capacity,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHCARE CONSULTANCY GROUP, LLC; THE SCIENOMICS GROUP, LLC; and HEALTH SCIENCE COMMUNICATIONS LLC,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

CASE NO. _____

Plaintiff Julie Embleton complains and alleges:

## NATURE OF THE CASE

1. This case arises out of Ms. Embleton's employment by Defendants Healthcare Consultancy Group, LLC, The Scienomics Group, LLC, and Health Science Communications LLC (collectively, "Defendants"). As a condition to beginning employment at Defendants' San Francisco office, Ms. Embleton was forced to sign employment offer documents representing that her employment was occurring in New York and purporting to apply both New York substantive law and New York forums to any employment disputes. After a successful start on the job, Ms. Embleton was terminated a mere two months after notifying management that she was pregnant and intended to take baby bonding leave, for reasons that smack of pretext.

2. Ms. Embleton brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), California Fair Employment and Housing Act (FEHA), the federal Family Medical Leave Act (FMLA), California Family Rights Act (CFRA), California Labor Code (Labor Code) and California common law.

## PARTIES

3. Plaintiff Julie Embleton is a resident of Austin, Texas. She is a former employee of Defendants. For the vast majority of her employment, including during many of the critical events giving rise to her claims, Plaintiff was a resident of Oakland, California who worked for Defendants in their San Francisco, California office.

4. Defendant Healthcare Consultancy Group, LLC is a limited liability company organized under the laws of Delaware, with offices in San Francisco, California, New York City, New York and elsewhere throughout the country and in England. It regularly conducts business in California, including through its office in San Francisco, and is registered to do business in California.

5. Defendant The Scienomics Group, LLC is a limited liability company organized under the laws of Delaware, with offices in San Francisco, California, Stamford, Connecticut, and New York City, New York. It regularly conducts business in California, including through its office in San Francisco, and is registered to do business in California.

6. Defendant Health Science Communications LLC ("HSC") is a limited liability company organized under the laws of Delaware, with offices in New York City, New York and, through offices it shares with its joint employers of Plaintiff, in San Francisco, California. While Health Science Communications is not registered to do business in California, it regularly conducts business in California, employed Plaintiff in California, and maintains clients in California.

7. Plaintiff is informed and believes and thereon alleges that Defendants are subject to such a degree of common ownership, control and management that, in doing the things hereinafter alleged, each corporation was the agent of the other corporation and is liable to Plaintiff under the law for the damages sustained by Plaintiff. Amongst other things, Defendants advertise the same jobs and represent those jobs as employment with their respective entities, use the same corporate branding and otherwise operate as an intertwined business and as agents of each other. As applied to Plaintiff's employment, Defendant Health Science Communications purported to be offering her employment, through its Healthcare Consultancy Group offices. Her wages were paid through The Scienomics Group, LLC.

8. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein each and every Defendant was the agent, representative, employee, servant or affiliated entity of every other Defendant and, in doing the acts herein alleged, each Defendant is liable and responsible to Plaintiff for the acts of every other Defendant.

9. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, were her employers under the FMLA, Title VII, and California law, that all of the Defendants herein did acts consistent with the existence of an employer-employee relationship with Plaintiff.

**JURISDICTION AND VENUE**

10. Plaintiff Julie Embleton is a resident of Austin, Texas. For the vast majority of her employment, including during many of the critical events giving rise to her claims, Plaintiff was a resident of Oakland, California who worked for Defendants in their San Francisco, California office. Even after moving to Austin, Texas, she was treated as a remote employee that

continued to work from Defendants' San Francisco, California offices. She also regularly travelled to the Bay Area for business and serviced primarily Bay Area clients.

11. As alleged above, Defendants are all residents of foreign states and conduct business in California.

12. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and a foreign state. The amount in controversy exceeds $75,000 exclusive of interest and costs.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges claims under FMLA and Title VII, laws of the United States.

14. This Court has personal jurisdiction over Defendants because they conduct substantial business in California, including this District, and have sufficient minimum contacts in California. Additionally, many of the acts and omissions alleged herein were committed by Defendants in this District, as Plaintiff was primarily employed by Defendants within this district and Plaintiff's employment contract, included the contested unlawful provisions alleged herein, was signed in this District.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff was employed by Defendants within this District, many of the key allegations contained herein occurred in this District, Plaintiff's employment contract, including the unlawful contested provisions alleged herein, was signed in this District, and many of the key witnesses, including but not limited to Plaintiff's former co-workers, her most important clients and the similarly situated employees covered by Plaintiff's Private Attorney General Act claim reside within this District.

**PROCEDURAL ALLEGATIONS**

16. On May 20, 2019, Plaintiff filed a complaint with the Department of Fair Employment and Housing (DFEH) against Defendants alleging pregnancy discrimination and retaliation because she requested and intended to take family care or medical leave protected by CFRA and interferences with her right to take the leave. She obtained a Right-to-Sue notice from

the DFEH the same day. The DFEH has a worksharing agreement with the Equal Employment Opportunity Commission (EEOC) and thus Plaintiff's DFEH complaint is a dual filed charge that constitutes a complaint filing with the EEOC. Plaintiff is awaiting the EEOC deadline after which Plaintiff is entitled to a right to sue from the EEOC and will seek leave to amend this complaint to confirm administrative exhaustion at that time. *See e.g. Surrell v. California Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008); *Stiefel v. Bechtel Corp.*, 624 F.3d 1240 (9th Cir. 2010).

17. On May 20, 2019, Plaintiff provided written notice to the Labor & Workforce Development Agency ("LWDA") via their online submission format and to Defendants via certified mail of the Labor Code legal claims and theories of this case prior to filing this complaint. After receiving notification from the LWDA that it does not intend to investigate the alleged violations, or after sixty days of the submission date of giving notice to the LWDA if no response has been received from the LWDA, Plaintiff will seek leave to amend this complaint to allege exhaustion of administrative remedies as required by Labor Code Section 2699.3.

### FACTS COMMON TO ALL CAUSES OF ACTION

18. Julie Embleton joined Defendants as a Senior Director, Client Relations in their San Francisco, California office in July 2018.

19. As an explicit condition of her employment, Defendants required Ms. Embleton to sign a Confidential Information, Work for Hire and Covenant Agreement that mandates that any dispute regarding the Agreement, or regarding her employment more generally, is governed by New York substantive law and must be brought solely in state or federal courts in New York. Additionally, Defendants' offer letter to Ms. Embleton represented that it was offering her employment in the company's New York office, despite the fact that Defendants were hiring Ms. Embleton to work out of its San Francisco office and had no actual intention or expectation that Ms. Embleton would be relocating to New York to work out of the company's New York office.

20. Ms. Embleton received and signed the Agreement in California and was expected to, and did, commence work at Defendants' San Francisco office. Ms. Embleton was not

individually represented by legal counsel in negotiating the terms of the Agreement and had no opportunity to negotiate the terms of the Agreement.

21. At the time Ms. Embleton was hired, Defendants were struggling to maintain relationships and deliverables with their pharmaceutical clients. Ms. Embleton had strong and longstanding relationships with pharmaceutical clients and was heavily recruited by Defendants. She immediately got to work to build and strengthen the company's client relationships and managed day-to-day deliverables as a liaison between internal teams and their clients.

22. Her first six months were tremendously successful. She secured significant revenue from pharmaceutical clients and was given resoundingly positive feedback from her internal team and company leadership.

23. On December 7, 2018, Ms. Embleton learned she was pregnant, with a due date in August 2019. On January 11, 2019, she notified her manager, Fariba Ghodrati, and Health Science Communication's CEO, Delphine Dubois, that she was pregnant.

24. Several weeks later, on January 25, 2019, Ms. Ghodrati interrogated Ms. Embleton as to whether she planned to return from maternity leave and as to how long she planned to take off. Tellingly, Ms. Ghodrati made a point of notifying Ms. Embleton that she had only taken two weeks off after the birth of her own son.

25. Ms. Embleton informed Ms. Ghodrati that she planned to take three to four months off, as she was entitled to take under both the law and Defendants' maternity leave policy. During the same meeting, she informed Ms. Ghodrati that she was planning to relocate to Austin, Texas in the coming weeks or months because of her husband's employment. Ms. Embleton and Ms. Ghodrati already operated out of offices across the county from each other and their colleagues are scattered around the country and many work remotely. Consequently, the future move to Austin did not raise significant concerns for Ms. Ghodrati.

26. Four days after her pregnancy notification, Ms. Ghodrati sent a revised set of annual goals to Ms. Embleton with incredibly lofty business development goals, especially for an account director like Ms. Embleton who was still working as an account lead on more than five different projects.

27. On February 14, 2019, Ms. Ghodrati pushed Ms. Embleton for a progress report on the annual goals she had delivered a mere two weeks earlier.

28. In addition to the revised, seemingly unachievable goals set by Ms. Ghodrati, her demeanor noticeably changed towards Ms. Embleton and took on a hostile and hyper-critical tone. By way of example, when Ms. Embleton had to delay her 1:1 meeting with Ms. Ghodrati by 5-10 minutes on February 14, 2019 while she put her son down for a nap, Ms. Ghodrati grumbled that it seemed like Ms. Embleton's "nanny situation" was becoming spotty recently.

29. On February 15, 2019, Ms. Embleton's family relocated to Texas, where she continued to handle all of her duties remotely, including her client relations functions in the Bay Area. At the time of her relocation, and for the remainder of her employment, Defendants continued to treat Ms. Embleton as a California employee working remotely, as evidenced by their continued classification of Ms. Embleton as a California employee for payroll and taxation purposes.

30. On February 27, 2019, Ms. Embleton returned to San Francisco for work for 3 days for a business pitch and to attend additional client relations meetings.

31. On March 13, 2019, Ms. Embleton reached out to HSC's human resources department since she still had not received any information about the company's maternity leave policy. Several days later, on March 15th, HSC responded to her inquiries in a cursory fashion by providing the employee handbook.

32. Eleven days later, on March 26. 2019, during a scheduled "touchbase," she was abruptly fired. The reasons cited were that relocation would disrupt her many important relationships with clients in the Bay Area and the temporary slow-down of client business associated a failed clinical trial. Neither Ms. Ghodrati, nor any of Ms. Embleton's other colleagues or her clients had previously registered any concerns regarding the move. Moreover, at the time of her termination notification, Defendants were actively recruiting to staff up in the very type of account leadership Ms. Embleton was fulfilling.

33. On the termination call, Defendants still encouraged her to return to the Bay Area for a work trip scheduled to commence the following day. The next day, on March 27, 2019,

Ms. Embleton returned to San Francisco for two days of on-site cross functional meetings with Defendants' clients. Defendants dispatched Jennifer Wheeler, Executive Vice President at HSC, to join Ms. Embleton in San Francisco. Ms. Wheeler instructed Ms. Embleton not to tell her clients in the Bay Area that Defendants had elected to terminate her.

34. On May 3, 2019, after completing a business trip to Europe for Defendants, Ms. Embleton worked her last day.

## FIRST CAUSE OF ACTION

**(Interference with FMLA Rights in Violation of 29 U.S.C. § 2615(a)(1))**

35. Plaintiff hereby incorporates by reference Paragraphs 1 through 34 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

36. Defendants were subject to the FMLA because they employed at least 50 part-time or full-time employees. Defendants employed at least 50 employees within 75 miles of San Francisco, California the office Plaintiff worked at and/or remotely reported in to during her employment with Defendants. To the extent New York City, New York, is deemed her worksite under her employment contract or for the period after she relocated to Austin, Texas and worked remotely, Defendants also employ at least 50 employees within 75 miles of New York City, New York.

37. As alleged above, Defendants were the joint employers of Plaintiff during the relevant time period under 29 CFR 825.104(c)(1). Alternatively, Defendants are a single employer under 29 CFR 825.104(c)(2) because they share one or more of the following: common management, interrelation between operations, centralized control of labor relations, including sharing a single HR department, and degree of common ownership/financial control.

38. Ms. Embleton was entitled to the benefits of FMLA baby bonding, because she would have worked more than twelve months for Defendants and had at least 1,250 hours of service in the year preceding her FMLA leave at the time of her due date and need for baby bonding.

///

///

39. Defendants violated 29 U.S.C. § 2615(a)(1) by terminating Ms. Embleton for requesting FMLA leave. By terminating her, Defendants interfered with her ability to take the FMLA baby bonding leave she was entitled to.

40. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

41. Defendants committed the acts herein in bad faith, with the wrongful intention of injuring Ms. Embleton. Ms. Embleton is thus entitled to recover liquidated damages.

## SECOND CAUSE OF ACTION

**(Interference with CFRA Rights in Violation of California Government Code § 12945.2(t))**

42. Plaintiff hereby incorporates by reference Paragraphs 1 through 41 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

43. Defendants were subject to CFRA because they employed at least 50 part-time or full-time employees. Defendants employed at least 50 employees within 75 miles of San Francisco, California the office Plaintiff worked at and/or remotely reported in to during her employment with Defendants. To the extent New York City, New York, is deemed her worksite under her employment contract or for the period after she relocated to Austin, Texas and worked remotely, Defendants also employ at least 50 employees within 75 miles of New York City, New York.

44. Ms. Embleton was entitled to the benefits of CFRA baby bonding, because she would have worked more than twelve months for Defendants and had at least 1,250 hours of service in the year preceding her CFRA leave at the time of her due date and need for baby bonding.

45. CFRA requires an employer to grant leave to an employee to, among other things, bond with a newborn baby. Ms. Embleton's CFRA rights were interfered when she was terminated before her due date, after notifying Defendants that she intended to take baby bonding leave.

///

46.     As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

47.     As a further direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered emotional distress, humiliation, shame, and embarrassment all to Ms. Embleton's damage in an amount to be proven at time of trial.

48.     Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Embleton, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Embleton's rights.  Ms. Embleton is thus entitled to recover punitive damages from Defendants in an amount according to proof.

### THIRD CAUSE OF ACTION

**(Retaliation in Violation of CFRA, California Government Code §§ 12945.2(l), (m))**

49.     Plaintiff hereby incorporates by reference Paragraphs 1 through 48 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

50.     Defendants were subject to CFRA because they employed at least 50 part-time or full-time employees.  Defendants employed at least 50 employees within 75 miles of San Francisco, California the office Plaintiff worked at and/or remotely reported in to during her employment with Defendants.  To the extent New York City, New York, is deemed her worksite under her employment contract or for the period after she relocated to Austin, Texas and worked remotely, Defendants also employ at least 50 employees within 75 miles of New York City, New York.

51.     Ms. Embleton was entitled to the benefits of CFRA baby bonding, because she would have worked more than twelve months for Defendants and had at least 1,250 hours of service in the year preceding her CFRA leave at the time of her due date and need for baby bonding.

52.     CFRA requires an employer to grant leave to an employee to, among other things, bond with a newborn baby.  Ms. Embleton was terminated in retaliation for notifying Defendants that she intended to take the statutory maximum baby bonding leave she was entitled to.

53. Defendants violated Government Code §§ 12945.2(l)(4), (m)(2) by terminating Ms. Embleton for requesting the leave.

54. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

55. As a further direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered emotional distress, humiliation, shame, and embarrassment all to Ms. Embleton's damage in an amount to be proven at time of trial.

56. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Embleton, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Embleton's rights. Ms. Embleton is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Sex Discrimination: Violation of Title VII, 42 U.S.C. §2000e)

57. Plaintiff hereby incorporates by reference Paragraphs 1 through 56 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

58. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to discriminate against any individual because of her sex. Sex is defined to include pregnancy and childbirth.

59. At all times relevant to this cause of action, Plaintiff has been a pregnant woman protected from sex discrimination by Title VII.

60. Defendants discriminated against Plaintiff by terminating her employment because of her pregnancy and impending childbirth and related leave.

61. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

///

///

62. As a further direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered emotional distress, humiliation, shame, and embarrassment all to Ms. Embleton's damage in an amount to be proven at time of trial.

63. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Embleton, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Embleton's rights. Ms. Embleton is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FIFTH CAUSE OF ACTION

**(Pregnancy Discrimination:  Violation of Government Code § 12940(a))**

64. Plaintiff hereby incorporates by reference Paragraphs 1 through 63 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

65. At all times herein mentioned, California's Fair Employment and Housing Act, Gov. Code, §§ 12940, et seq., was in full force and effect and fully binding upon Defendants. Section 12940(a) outlaws discrimination on the basis of sex, which includes pregnancy or medical conditions related to pregnancy, pursuant to Section 12926(q)(1). Plaintiff was a member of a group protected by that statute and had given notice of her pregnancy and intent to take maternity leave. Defendants violated Government Code § 12940(a) because Defendants terminated Plaintiff as a result of her pregnancy.

66. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

67. As a further direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's damage in an amount to be proven at time of trial.

68. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SIXTH CAUSE OF ACTION

### (Wrongful Termination in Violation of California Public Policy)

69. Plaintiff hereby incorporates by reference Paragraphs 1 through 68 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

70. Defendants' termination of Ms. Embleton's employment violated the fundamental public policy of the State of California prohibiting an employer from interfering with or retaliating against an employee for exercising her rights under CFRA, Government Code §§ 12945.1-12945.2, and FMLA, 29 U.S.C. §§ 2611, *et seq.* Defendants' termination of Plaintiff's employment also violated the fundamental public policy of the State of California that employers shall not discriminate on the basis of medical condition, and/or pregnancy under the FEHA, Government Code §§ 12900, *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

71. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

72. As a further direct, foreseeable, and proximate result of Defendants' unlawful actions, Ms. Embleton has suffered emotional distress, humiliation, shame, and embarrassment all to Ms. Embleton's damage in an amount to be proven at time of trial.

73. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Embleton, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Embleton's rights. Ms. Embleton is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SEVENTH CAUSE OF ACTION

### (Private Attorneys General Act Penalties, Labor Code § 2699)

74. Plaintiff hereby incorporates by reference Paragraphs 1 through 73 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

75. Under the Private Attorneys General Act of 2006, Labor Code §§ 2698-2699.5, an aggrieved employee, on behalf of himself or herself and other current or former employees, may

recover penalties under any provision of the Labor Code that provides for civil penalties, or, for Labor Code provisions that do not already provide for civil penalties, a default penalty.

76. As set forth above, Defendants have committed numerous violations for which the Labor Code thereby provides for the recovery of penalties, including violations of §§ 432.5, 925 and 1198.5.

77. As a direct result of Defendants' conduct as described, Plaintiff is entitled to recover, on her own behalf and on behalf of others similarly situated, the maximum civil penalties permitted by the Private Attorneys General Act from Defendants for all violations of the Labor Code herein described, including violations of Sections 432.5, 925 and 1198.5.

78. Plaintiff has provided written notice to the Labor & Workforce Development Agency ("LWDA") via their online submission format and to Defendants via certified mail of the legal claims and theories of this case prior to filing this complaint. After receiving notification from the LWDA that it does not intend to investigate the alleged violations, or after sixty days of the submission date of giving notice to the LWDA if no response has been received from the LWDA, Plaintiff will seek leave to amend this complaint to allege exhaustion of administrative remedies as required by Labor Code Section 2699.3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, prays for judgment against Defendants as follows:

1. For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, and damages for emotional distress and pain and suffering, according to proof allowed by law;

2. For civil penalties and liquidated damages allowed by law;

3. For an injunction against Defendants prohibiting them from future acts of discrimination and retaliation against Plaintiff and from future violations of the Labor Code provisions alleged herein;

4. For liquidated damages and punitive damages allowed by law;

5. For an award to Plaintiff of costs of suit incurred herein and reasonable attorney's fees;

6. For an award of prejudgment and post-judgment interest; and,

7. For such further legal and equitable relief as the Court deems just and proper.

DATED:  May 21, 2019                    Respectfully submitted,

RUDY, EXELROD, ZIEFF & LOWE, LLP


By: /s/ *Chaya M. Mandelbaum*
    CHAYA M. MANDELBAUM
    MICHELLE G. LEE
    *Attorneys for Plaintiff*
    JULIE EMBLETON

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury.

DATED:  May 21, 2019                    Respectfully submitted,

RUDY, EXELROD, ZIEFF & LOWE, LLP


By: /s/ *Chaya M. Mandelbaum*
    CHAYA M. MANDELBAUM
    MICHELLE G. LEE
    *Attorneys for Plaintiff*
    JULIE EMBLETON